**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO.: 1:18-cv-22016-DPG-AMO**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**JOHN DOE 1**
**a/k/a "Jeff Adams,"**

**JOHN DOE 2**
**a/k/a "James Jackson," and**

**JOHN DOE 3**
**a/k/a "Asima Ham," a/k/a "Asim Aham,"**
**a/k/a "Asima Asima,"**

**all of whom are doing business as**
**"www.fortune500sweepstakes.com"**
**and "www.fraudprotectionagency.com",**

**Defendants.**
**______________________________________/**

**DECLARATION OF UNITED STATES POSTAL INSPECTOR BRYAN MASMELA**

I, Bryan Masmela, have personal knowledge of the facts set forth below, and if called as a witness I would testify as follows:

1. I am a United States Postal Inspector and have been employed by the United States Postal Inspection Service ("USPIS") since February 2003. As a U.S. Postal Inspector, I am responsible for the investigation of violations of United States law, including violations of Title 18 of the United States Code. I am currently on detail to the Department of Justice Fraud Team in Washington, D.C., where my duties include investigating cases related to mail fraud and wire fraud, specifically the use of the mails to commit fraud or to further a fraud scheme. When

not on detail, I am assigned to the fraud team of the Inspection Service's Miami Division. I have attended specialized training courses, and I have conducted and am presently conducting approximately ten investigations of fraudulent telemarketing schemes. I have attended specialized training courses in the area of electronic evidence gathering and reviewing.

2. The facts set forth in this affidavit are based on my personal knowledge, knowledge obtained during my participation in this investigation, information from other individuals including other law enforcement officers, complainants, and other parties, witness interviews, and my review of documents, public records, and other sources.

3. Based on my training and experience and the facts as set forth in this declaration, there is probable cause to believe that violations of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), and related crimes have been committed by Defendants.

**Background**

4. I am the lead postal inspector assigned to investigate the matter of JOHN DOE 1, a/k/a "Jeff Adams," JOHN DOE 2, a/k/a "James Jackson," and JOHN DOE 3, a/k/a "Asima Ham," a/k/a "Asim Aham," a/k/a "Asima Asima" ("Defendants").

5. Defendants use the electronic wires and the U.S. Mail to engage in a mail and wire fraud scheme impacting primarily the elderly and vulnerable. Defendants use cold calls and fraudulent written solicitations designed to induce elderly and vulnerable victims to send money.

6. Defendants falsely tell intended victims that they have won a lottery or sweepstakes competition to induce them to make payments in order to receive the promised money or prize.

7. In reality, after making the payment, the victims do not receive the promised money or anything of value.

**Defendants' Fraudulent Scheme**

8. Intended victims typically receive an initial phone call from a person who informs them that they have won a very large cash sweepstakes prize, usually several hundred thousand dollars.

9. Sometimes the person on the phone claims to be a CEO or CFO or other representative of Fortune 500 Sweepstakes.

10. Other times, the person claims to be a government official with the Fraud Protection Agency. The caller falsely claims that the Fraud Protection Agency is a consumer advocacy agency that is part of the U.S. Federal Trade Commission. John Doe 2 calls himself "James Jackson" of the Fraud Protection Agency. John Doe 1 goes by the name "Jeff Adams" and also claims to work at the Fraud Protection Agency.

11. Does 1 and 2 assure consumers that the claimed prize is real and say that, in order to receive the prize, they must pay a processing fee or registration bond equal to one percent of the cash prize. They claim the fee is a legitimate fee required by U.S. law.

12. Does 1 and 2 purport to provide official, government verification of the fact that the consumer has won a prize and they urge consumers to claim the money or else it would be forfeited.

13. In reality, the Fraud Protection Agency is not a government entity, but rather a fictitious organization fabricated by Defendants for the purpose of defrauding consumers. The Federal Trade Commission does not have a system for verifying sweepstakes competition winners nor does it track whether the winners have collected their prizes. Defendants use the name, logo, and imprimatur of the U.S. Federal Trade Commission to convey an impression of legitimacy and trustworthiness and to reassure intended victims that they are not being targeted by a scam.

**Websites**

14. To further reassure skeptical consumers, the perpetrators tell them to look up the sweepstakes company and the Fraud Protection Agency on websites created for the purpose of facilitating the fraud: www.fraudprotectionagency.com and www.fortune500sweepstakes.com. The domain names for both of these websites were registered by John Doe 3, and the sites are accessible via the World Wide Web.

15. The Fraud Protection Agency ("FPA") website falsely represents that the Agency is part of the Federal Trade Commission. It falsely claims that "[t]he Fraud Protection Agency stops unfair, deceptive and fraudulent business practices by: collecting complaints and conducting investigations suing companies and people that break the law developing rules to maintain a fair marketplace educating consumers and businesses about their rights and responsibilities."

16. According to the FPA's website, James Jackson leads the FPA's "team" of Agents. Jackson is characterized as an attorney "who's [sic] leadership has lead [sic] to hundreds of arrested [sic] and prevented many gangs and con men from stealing from American citizens." The FPA's website further claims that Mr. Jackson is "a leading expert in the Federal Registration Bond practice."

17. The FPA's website also includes photos of other FPA "Agents," including "Jeff Adams," who is characterized as a "Consumer Inspector Officer."

18. Attached hereto as Exhibit A is a true and correct copy of screenshots taken of the Fraud Protection Agency website on February 15, 2018.

19. The Fortune 500 Sweepstakes website represents that it is part of the "Fortune 500 Sweepstakes Network LLC" and indicates that it is "Licensed and Bonded in the State of

Nevada." The website includes a "fraud prevention" warning and instructs visitors to contact James Jackson at the Fraud Protection Agency with concerns about suspicious sweepstakes.

20. The Fortune 500 Sweepstakes website "Winners" page features testimonials from individuals purporting to have won cash prizes in prior sweepstakes drawings. For example, a testimonial from an individual named "Mitchell S" from Anchorage, AK, claims that he won a $100,000 prize in the "F5S [Fortune 500 Sweepstakes] Sweepstakes XIX." In the testimonial, "Mitchell S" says he spoke to someone from the Fortune 500 Sweepstakes, who purportedly was "very sincere on the phone" and states that while "most of us [who enter these sweepstakes] fill out that particular block on the order form, with skepticism, that says we might win a prize . . . I can now state that it can happen, and does."

21. Doe 1 emailed a link to the Fortune 500 Sweepstakes website to an intended victim using the email address fortune500@accountant.com.

22. Attached hereto as Exhibit B is a true and correct copy of screenshots taken of the Fortune 500 Sweepstakes Company website on February 15, 2018.

**<u>Solicitation Letters</u>**

23. The perpetrators follow up by transmitting official-seeming solicitation letters through the U.S. Mail, by email, and by fax.

24. A typical, recent solicitation packet includes two letters that purport to be from Fortune 500 Sweepstakes. Both letters are signed by "Charles P. Steineberg, CEO."

25. The letters are characterized as an "OFFICIAL NOTIFICATION" or "FINAL NOTICE" and inform the consumer that he or she has been selected as a second-place prize winner to receive a cash prize of $650,000 in a semi-annual drawing. The letters state that the consumer has a period of ninety (90) days to collect the award.

26. Attached hereto as Exhibits C and D are true and correct copies of letters from Fortune 500 Sweepstakes that were sent to a victim as part of Defendants' fraud scheme.

27. The fraudulent solicitation also includes a letter purporting to be from the Fraud Protection Agency. The letter bears the actual logo of the Federal Trade Commission and indicates that it was signed by "Edith Ramirez, Federal Trade Commission Chairwoman."

28. The letter falsely states that the Fraud Protection Agency was established "to prevent business practices that are anticompetitive or deceptive or unfair to consumers; to enhance informed consumer choices and public understanding of the competitive process." The letter purports to confirm what consumers have been told over the phone, that they are a prize winner entitled to receive a large sum of money "[a]ccording to the Federal Trade Commission internal system."

29. The letter also misrepresents that, "[a]ccording to the U.S. laws, . . . any financial transactions over $250,000.00 being transferred beyond State borders[] require a Federal Registration Bond . . . [of] a standard 1%[,] which is $6,500." It indicates that once the fee is "processed and credited," the consumer's award will be delivered in approximately 2 to 3 business days.

30. In fact, the letter is not affiliated in any way with the U.S. Federal Trade Commission. Nor was it signed by Edith Ramirez, former Chairwoman of the Commission.

31. Attached hereto as Exhibit E is a true and correct copy of a letter purporting to be from the Fraud Protection Agency that was sent to a victim as part of Defendants' fraud scheme.

32. The Federal Trade Commission's "Consumer Sentinel" database contains complaints dating back to September 2011 documenting fraudulent phone calls and solicitations about a sweepstakes scheme that employs the idea of a "Fraud Protection Agency" to legitimize

the consumer's supposed winnings. Consumer Sentinel is a repository of all complaints received by the Federal Trade Commission and its partnering agencies. Intended victims of these fraudulent solicitations reside in numerous states across the country, including Florida, California, Illinois, Louisiana, Michigan, Mississippi, Nebraska, New York, Pennsylvania, South Carolina, Texas, and Washington. In particular, since approximately June 2017, a number of similar complaints have been filed about fraudulent solicitations employing the websites www.fortune500sweepstakes.com and www.fraudprotectionagency.com and the corresponding aliases and letters discussed above. Known recipients of these solicitations reside in Illinois, Mississippi, and Texas. Intended victims in Illinois and Texas are known to have accessed the websites registered by Doe 3.

**The Defendants**

33. Defendant John Doe 1 a/k/a "Jeff Adams," calls intended victims throughout the United States and poses as an official of the U.S. Federal Trade Commission. Upon information and belief, Doe 1 resides outside of the United States.

34. Defendant John Doe 2 a/k/a "James Jackson," calls intended victims throughout the United States and poses as an official of the U.S. Federal Trade Commission. Upon information and belief, Doe 2 resides outside of the United States.

35. Defendant John Doe 3 a/k/a "Asima Ham," a/k/a "Asim Aham," a/k/a "Asima Asima," is the registrant of the domain names used in furtherance of the fraud scheme. Upon information and belief, Doe 3 resides outside of the United States.

36. Defendants have taken numerous steps to hide and conceal their true whereabouts and identities.

37. As part of the investigation, the United States obtained publicly available domain name registration records ("WHOIS" records) for each of the Defendants' domain names

identifying the registrars for the domain names and the contact information the Defendants provided their registrars. The registrar for both domains is GoDaddy Inc., located in Scottsdale, Arizona. The registry for both domains is VeriSign, Inc., located in Reston, Virginia.

38. The United States also interviewed intended victims and obtained other information from third parties through its investigation. The intended victims, written solicitations, relevant WHOIS domain registration records, and other documentation gathered by the United States provide contact information for Defendants as set forth in the summary chart below:

| Defendant | Source | Name Given | Mailing Address Given | Email Given |
|---|---|---|---|---|
| John Doe 1 | Registration for email address fortune500@accountant.com | Jeff Adams | None provided | Fortune500@accountant.com |
| John Doe 1 | Phone call to victim | Jeff Adams | SJ0-IK-40810, 2745 NW 82nd Ave, Doral, FL 33198-1070 | None provided |
| John Doe 2 | Phone call to victim | James Jackson | SJ0-IK-40810, 2745 NW 82nd Ave, Doral, FL 33198-1070 | None provided |
| John Doe 3 | Registration for domain fraudprotectionagency.com | Asima Asima | hpiuu, florida Florida 89077 US | asimaham@gmail.com |
| John Doe 3 | Registration for domain fortune500sweepstakes.com | Asima Ham | ubhv, uiqnq Hawaii 13245 US | asimaham@gmail.com |
| John Doe 3 | Registration for email address asimaham@gmail.com | Asim Aham | None provided | asimaham@gmail.com |

39. The physical contact addresses in Florida and Hawaii provided by Defendant John Doe 3 in connection with the WHOIS domain registrations for the relevant Subject Domain Names are obviously fictitious.

40. The email address provided by Defendant John Doe 3 to the registrars of the domains is likely to be valid, as this email address would provide the primary means of communication between the Defendant and the registrars. Information from Google, Inc. of Mountain View, California, the communications service provider for this email address, reveals

that this email address has been used recently from a location outside the United States, specifically the United Arab Emirates.

41. The email address Fortune500@accountant.com is likely to be valid, because it is being used to send the fraudulent solicitations to intended victims. Information from 1&1 Mail & Media, Inc. of Chesterbrook, Pennsylvania, the communications service provider for this email address, reveals that this email address has been used recently from a location outside the United States, specifically San Jose, Costa Rica.

42. The physical address SJ0-IK-40810, 2745 NW 82nd Ave, Doral, FL 33198-1070 is likely to be a valid address because it was used by Does 1 and 2 to receive payment from a victim. A Google search shows that this is the address for Red Rabbit Logistics. Based on my knowledge and experience as a postal inspector, Red Rabbit Logistics appears to be a freight forwarding company, and I believe that the code associated with the address, SJ0-IK-40810, may indicate that shipments sent to this address will be forwarded by Red Rabbit to a company in San Jose, Costa Rica through the Juan Santamaria International Airport (airport code "SJO").

43. Other false addresses and geographic locations that Defendants use include:

- The Fortune 500 Sweepstakes website: "Suite 455, New York, 10007";
- The Fraud Protection Agency website: agency headquarters is located at "Suitland federal center 2, 4301 Suitland road, Suitland MD 20746";
  - Also claims agency has an office in Chicago, IL;
- Written letter from the Fraud Protection Agency;
  - Mailing address: 201 Suite 771 Independence Ave. SW and 3rd Ave., SW Washington, DC 20024;
- The Fortune 500 Sweepstakes website says that company is registered in Nevada;
  - There is no record of that on the Nevada business registration records website.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief. Executed on May 16, 2018 in Washington, D.C.

BRYAN MASMELA
Postal Inspector
United States Postal Inspection Service