**DECLARATION OF BRENDA MULKEY**

I, Brenda Mulkey, hereby state that I have personal knowledge of the facts set forth below and am competent to testify about them. If called as a witness, I could and would testify as follows:

1. I am over the age of 55 and reside in Sachse, Texas. In 2017, I became the victim of a fraudulent sweepstakes prize distribution program.

2. In summer of 2017, I received a telephone call from a person who called himself Michael Walker and represented that he was the Chief Financial Officer of a company called Fortune 500 Sweepstakes. Mr. Walker informed me that I had won a contest and was entitled to receive $650,000 in after-tax winnings. He told me to call a man named James Jackson who worked at the Fraud Protection Agency to find out how to collect my prize.

3. At first, I was unsure if the prize was real. I called the phone number and spoke to a man who said his name was James Jackson. He assured me that the prize was real and said that, in order to receive the prize, I had to pay a processing fee of $6,500, one percent of my award. Mr. Jackson said that the $6,500 fee was a legitimate fee required by the Patriot Act so that the government can detect terrorism and other illegal activity. Later, someone who went by Jeff Adams and claimed to be Mr. Jackson's boss at the Fraud Protection Agency also called me and confirmed the same story that Mr. Jackson had told me.

4. Over a period of several weeks, I continued to get phone calls from Mr. Jackson, Mr. Adams, and at least one other person telling me that the prize was real and urging me to claim the money or it would be forfeited.

5. I visited the Fortune 500 Sweepstakes website and saw that it includes a "fraud prevention" warning and instructs visitors to contact the Fraud Protection Agency with concerns about suspicious sweepstakes.

6. On October 27, 2017, at the suggestion of one of the callers, I paid to receive documents about the sweepstakes by fax at a local UPS Store. A true and correct copy of the UPS receipt and the contents of the fax are attached to this declaration as **Exhibit A.** A description of these documents follows.

7. The fax included two letters from a company representing itself as Fortune 500 Sweepstakes. Both letters are dated June 7, 2017, and are signed by "Charles P. Steineberg, CEO."

8. One letter is characterized as an "OFFICIAL NOTIFICATION" and informed me that I had been selected as a second-place prize winner to receive a cash prize of $650,000 in a semi-annual drawing held on April 17, 2017. The letter also stated that I had a period of ninety (90) days to collect my award. **Exhibit A at 1**.

9. The other letter from the Fortune 500 Sweepstakes is characterized as a "FINAL NOTICE" and is otherwise substantially similar to the letter described above. **Exhibit A at 2.**

10. The fax also included a letter dated June 7, 2017, from the Fraud Protection Agency. This letter looked very official to me. It included a logo bearing the name of the Federal Trade Commission and indicated that it was signed by "Edith Ramirez, Federal Trade Commission Chairwoman." **Exhibit A at 4.**

11. The letter stated that the Fraud Protection Agency was established "to prevent business practices that are anticompetitive or deceptive or unfair to consumers; to enhance informed consumer choices and public understanding of the competitive process."

12. The letter appeared to confirm what I had been told over the phone. It asserted that I had been selected on April 17, 2017, by Fortune 500 Sweepstakes Company as the second-place prize winner to receive $650,000, "[a]ccording to the Federal Trade Commission internal system."

13. The letter also stated that, "[a]ccording to U.S. laws, any financial transactions over $250,000 being transferred beyond State borders, require a Federal Registration Bond… [of] a standard 1%, which is $6,500" ("processing fee"). The letter further indicated that once the fee was "processed and credited," my award would be delivered in approximately 2 to 3 business days.

14. The letters and the statements made by the callers led me to believe that I had won the cash prize. Based on those representations, I believed that if I mailed the required fee to Fortune 500 Sweepstakes then I would receive $650,000.

15. I explained over the phone several times that I did not have $6,500. After repeatedly being urged to pay the full amount, finally one of the callers told me that I was eligible for a discounted fee of $800, because I receive social security disability benefits.

16. On November 1, 2017, I obtained a money order for $800 to pay the fee. A true and correct copy of the receipt for this money order is attached to this declaration as **Exhibit B.** To gather $800, I had to borrow money from CashNetUSA and pawn family jewelry.

17. On November 3, 2017, I sent the money order via UPS Next Day Air to Orlando Mora, SJ0-IK-40810, 2745 NW 82nd Ave, Doral, FL 33198-1070. A true and correct copy of the shipment receipt is attached to this declaration as **Exhibit C.**

18. Although I sent the money order, the company failed to provide me with any check or prize. I have continued to receive dozens of similar phone calls and letters in the U.S. mail from different companies, making similar promises that I will receive cash or prizes if I pay a fee.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on 5-19, 2018, in Sachse, Texas.

Brenda Mulkey

BRENDA MULKEY